The first year in law school, we were taught that the law of torts was a law which arose by allocating the loss or economic gain of a person to another person, and that's what we're going to talk about today. Let's assume that's all true, but let's take this a step further in the real world. What are the parameters? Somebody slides off the road. Under the rescue doctrine, if a police officer responding to the scene of the accident is hit by another car, does the rescue doctrine apply against the defendant in this case? Yes, very much so. So it's like strict liability, then, you're saying, that if somebody goes off the road, anything that happens after that is strict liability. So if you create a condition of danger through your negligence and someone is coming to your aid, then the negligence of the second driver, the subsequent driver, does not break the causation, and your conduct of coming to the aid of the rescuer is not contributory negligence because we want people to rescue. So it is strict liability, you're saying. It has to be your position, that's what you're saying. Anybody coming to the aid of the imperiled party, you know, the imperiled party is responsible. That's correct. That's exactly what the rescue doctrine says. And if a doctor improperly treats that wound and it gets worse, then under the rescue doctrine, the driver would be also liable. That's what the instructions say. The instructions say that even if the subsequent medical care is negligent, the defendant is liable for the flaw. That's a whole different field of law, but that is the law as it currently stands in Illinois. And then the argument in this case was, number one, well, it wasn't really imminent that this was going to happen, and therefore, the rescue doctrine doesn't apply. What about that argument? Well, the whole thing happened within five minutes. I mean, they hadn't even gotten from their car all the way to the defendant's car yet. Now, counsel made a big deal about the fact they were running. There's no case in Illinois that says you have to run to the scene in order for it to be the rescue doctrine. There was snow on the side of the road, they were having to walk on the edge, and they walked, they didn't run. Maybe the court should say, well, okay, we're going to impose that requirement. You have to run in order for the rescue doctrine to apply. And that was the whole theme of the case. They didn't run. They didn't run. It wasn't imminent. But it happened really. Counselor, are you saying imminent or imminent? E or I. With an E. E? I'm sorry. I-M-M, not an E-M. You're correct. The long and short of it is it happened within five minutes. It was, in fact, going to happen fairly quickly. Is there an outside time limit? If the situation is dangerous but the road is less traveled, the fact that it might be ten minutes until the next car comes along, does that mean the rescue doctrine doesn't apply? Well, the jury returned a verdict in favor of the defendant, correct? They did. Well, couldn't they have found that, you know, the woman was getting out of the car? I mean, in the facts of this case, how was she in a position of imminent peril? If the car that killed Plaintiff's decedent had been 50 feet further one way or the other when she lost control, she would have hit the defendant's car and not the plaintiff's decedent. The plaintiff's decedent was coming to help and was close when this car slid out. And the passengers by, each of them testified, they were concerned that exactly that would happen, that the next car would spin out and hit the defendant's car and she might be injured. And it turned out they missed that car but they killed Plaintiff's decedent, exactly what the rescue doctrine is designed to prevent. Well, again, when wouldn't a person, and to carry this out to its logical extension, as I asked about strict liability, when then can you conjure up a scenario hypothetical when the defendant wouldn't be in a position of imminent peril or danger as you're describing it? Isn't the phrase imminent peril or danger somewhere in the mix here or no? No. Actually, the case is talked about as simply a position of peril. And that was the point of my brief is that, and that's why the instructions were so important. The defendant's negligent act places a third party or herself in a position of peril such that others attempt to rescue and they're injured in the attempt. That is the rescue doctrine. There's no cases that say there's some outside timeline. It has to be within the next 30 seconds or 45. I recognize that. But don't the cases talk about the context of an imminent peril or danger? Well, it can't be next week or next month. But in this particular case, it happened within several minutes. What if there had been a deer standing in the roadway or had jumped in front of the car of the defendant and she either braked or swerved but ultimately went off the road? Would she be liable under these circumstances? I guess that's a question as to whether she was negligent or not in terms of swerving to miss the deer because initially she has to put someone in a position of peril through negligence. There is a requirement. Was there a special interrogatory to that effect? No. Submitted to the jury? No. If the jury came back with a not guilty or non-liability, couldn't they have found that this was a natural hazard and that the incident was not caused by negligence? Not in this case because the defendant, number one, admitted that she panicked and oversteered. We thought she admitted that she applied to brakes. I don't know. Did she also admit that she oversteered? Yes, panicked and oversteered. There was nothing other than the fact that there was ice on the road. This was an obvious situation that existed. This was not some act of God where a tornado picked her up and took her off of the street. You have to ask yourself, why did the jury do what they did under these circumstances? Did they not like claims counsel? Well, that's not a reason for them to give the verdict they did. Did they not like the plaintiff's representative? And that's possible. He was a fairly pathetic and disabled individual. But that's not a reason to do it either. Is it as a result of the arguments of counsel suggesting that the eyewitness who said that she was on her cell phone with one hand and smoking a cigarette with another was making it up some three and a half years after the incident, when in fact she had his handwritten statement saying that he had made the date of the incident and she didn't bring it up until final argument? Could that have influenced the jury to reach the wrong conclusion? I suggest it could have if you have an eyewitness who says she's driving, smoking with one hand, in the ice, talking on the cell phone with the other. Driving with her feet? Evidently. And the argument is you don't make the suggestion when the witness is on the stand because then the prior consistent statement can come in to rebut the inference of recent fabrication. So you wait until argument when the witness isn't available and you say to the jury, well, first time he mentioned that was three and a half years after the incident, when in fact you know it's not true. And then you can't bring in the statement because the witness is already gone. And then the trial court sustains the objection to the rebuttal argument suggesting that the police officer had questioned everybody at the scene, which in fact she testified she did. I suggest to you that that is. You read cases all the time that say, well, there's error, but it's not prejudicial. And here we've got a case where a jury just does absolutely the wrong thing and you've got what appears to be error. How can you say it's not prejudicial when you make that kind of an argument during closing without support of the evidence? In fact, contrary to the evidence. And we have jury instructions that. Are you suggesting that that trial counsel was just legally negligent? Not legally negligent. I'm suggesting she made an absolutely improper argument. Right. That she committed legal malpractice. I mean, is that what you're saying? Oh, I'm not saying it's legal malpractice. I'm saying that the argument was improper. I'm suggesting you can't say to a jury, ladies and gentlemen, the first time he questioned about this was three and a half years after the incident, when in fact you have in your hands a statement that he made the day of the collision that says she was smoking a cigarette on one hand and talking on the cell phone on the other. You can't suggest that to the jury when it's contrary to the evidence. If he wasn't questioned about a diary that he wrote 10 years before and the diary indicated something. I mean, there's a difference between saying that he was questioned three years previously and there was an inconsistent statement, which is also inconsistent with what he wrote three years previously. And it's another thing to say what you said. Well, he was questioned today by a trooper. That's exactly my point. And he told the trooper the same thing he told. Which trooper? The state trooper that responded to the scene. Didn't she testify that she never talked to Mr. Martin? That maybe some of her coworkers did, but she'd never spoken with him? That she was there really to investigate the accident between, I think it was Ms. Morrison. But the point is, there were police officers that did talk to him on the day of the question. The first time he was questioned about this was not three and a half years later. But the first time the information, I think what Mrs. McLaren's talking about is there's an inference that maybe the information just surfaced for the first time three and a half years later. Well, we know that's not true either because, well, I take that back. Do we know that to be true? I don't know that we don't know that. Right. When you couple that with the, and then there was the thing about the TV show. There was a TV show. Well, there's no evidence in the record about any TV shows. And the statement about there being studies that show that people fill in. And after the objection was sustained, counsel came back to it and mentioned it again. And she argued again later on that people just have a tendency to fill in facts. Well, there's no evidence in this record that he was filling in facts. In fact, his testimony was consistent with the statement that he wrote down the day of the collision. And when you couple that with the instructions that imply or suggest these additional hurdles that the plaintiff has to procure, you begin to see how the jury could reach a verdict that was contrary to the evidence, contrary to the manifest way of the evidence. And in this case, that's exactly what happened. This is the rescue doctrine.  She's lucky she didn't get killed instead of plaintiff's decedent. Plaintiff's decedent was injured. And clearly there was damages. There isn't any question but that the family, this was the only breadwinner in the family. She was the mother of the children. She was the only caretaker. Father was horribly disabled and unable to care for himself or the children. There is no issue that there weren't damages in this case for all those reasons. We ask the court to reverse the trial court's order and grant the plaintiff a new trial. Thank you. Do you wish to reply? Yes, Your Honor. May it please the court? Counsel? I disagree with many things that counsel has said and implied and outright alleged. However, I think what is important here is what is the rescue doctrine. The doctrine historically, and the case law goes back to the 1800s, has to do with imminent peril and a person knowing that a risk to his person could take place, but because of the fact they are wanting to save the life or secure the safety of the person in danger, they voluntarily take on that risk to their own person to try to save another. This case is nothing of that sort of situation. As far as Ms. Ault's action of being on the side of the road, I don't think automatically it's negligence for her to go on the side of the road. Was the rescue doctrine designed to ameliorate the draconian results of contributory negligence, which I think existed before Sabata v. White Motors or something like that, that basically said that 1% of contributory negligence precludes recovery completely? I believe so. And the rescue doctrine relates to the fact that somebody may take upon or assume a risk such that, having done so, one would reasonably presume that the proof is in the pudding and the assumption of risk was negligent? I believe that's exactly it, that the theory is they want to encourage the people to take extraordinary measures to save the life or secure the safety of someone who is at risk of danger and not then come around and say, oh, well, because you were injured in that situation, you can't recover. So it's exactly that, so that the contributory negligence of that person is disregarded. If that's the case, then, as Justice Hudson was relating, where does strict liability come in? Well, I think counsel is trying to make it strict liability, but this is certainly not a strict liability situation. And I don't think the rescue doctrine was ever intended to be a strict liability situation. There are more factors involved and there has to be some leeway. I don't envision at all that this is a strict liability doctrine. Could the jury have found that your client was not negligent at the get-go and, therefore, the rescue doctrine never came into being? They could have. Counsel, let me ask you this. What about his point that the court errors in instructing the jury that the rescue doctrine applies to situations of imminent peril or danger? I think that the— Does the case law say that it has to be imminent peril or danger, or is that an extrapolation? The cases, particularly going back to Leiterman, which is from 18-something, the railroad cases, and I think the initial rescue doctrine cases were, in fact, railroad involved. Those also talked about imminent danger and grave peril, but the words imminent was used in not only at least the oldest case I could find, Leiterman, but also in Sussman case law for many, many years. In those cases that don't use the word imminent are situations where there is logically imminent risk. So I think imminent is absolutely required because it's the imminency of the danger as well as the magnitude of the danger that combine to make it okay or encourage for someone to risk their own life to try and get that person out of that situation. So you're saying it's not required in the case law, it's at least consistent with the case law? Well, I think it's required from the beginning of the case law, but I do believe that there are cases that don't use those terms, but those cases, even though they don't use the term imminent, imply it not only by the cases they cite which contain the requirement of imminent, but also based on the circumstances of those cases. It's clear from the context it would be so. Absolutely. And I believe counsel has also argued, I think he indicated that the crux of our argument to some extent was to argue the imminency or the lack thereof, but yet he acknowledges that this was imminent in terms of his argument to the jury, that it all happened within a short period of time. So I think that argument doesn't fly either because he acknowledges that these things happen in a magnitude or a matter of brief moments, but nonetheless, this is still not the kind of danger nor the type of situation that was envisioned by the rescue doctrine, and you can't forget the fact that one of the elements is that the plaintiff, the plaintiff's decedent in this case, must have voluntarily assumed a known risk of harm, and all of these elements are there. The jury might have found that, in fact, Ms. Ault wasn't negligent. We all drive in icy conditions, and sometimes reasonable people do everything they can to try to avoid a situation, but conditions are such that their reasonable efforts fail. Could the jury have decided that? They could have. But that's just one prong of what they need to find under the rescue doctrine based on the case law. Well, it's the rescue doctrine based upon the belief that the defendant commits a negligent tort, which creates a crescendo or domino effect such that because of some other acts by a third party, the plaintiff is injured. However, the rescue doctrine doesn't necessarily cover situations where that third party was independently negligent, such that the causal link was broken. Because in the hypotheticals we were asking Mr. Keller, we were getting to downstream liability, and the question, we never brought it back closer to home, which is does the rescue doctrine still work if the person who injured, maimed, or killed the plaintiff was guilty of negligence in their own sense? I don't think so. Obviously, there's any number of scenarios we could maybe twist to put in there, but as you've indicated, I don't think so. I think that's an intervening cause that breaks any approximate causation. And I think because of the fact that this woman, Alt, was on the side of the road, that is not, counsel argues that that in and of itself is a place of danger, a place of imminent peril because anything could happen. Well, I don't think that's well taken because, for example, our statutes require that if a person is walking on the road that they walk on the shoulder. Presumably, the legislature in drafting that particular statutory pronouncement considered that walking on the side of the gravel road or the gravel shoulder was a safe place. I don't think at all the fact that she's not only not on the side of the road but further into the ditch. I don't think the fact that she is there in any case makes that place a place of imminent peril or danger or for that matter any danger at all. It's a place, but the fact that she's there certainly is further from a place that the legislature says it's okay to walk. So where she was in this particular case in and of itself is not a place of danger. So what you're talking about is the rescue document is like a bullseye and that there are relative zones, each with a certain point total, and the closer you get to the defendant and the bullseye, the liability increases? No, that's not what I'm saying. I'm just saying that. Then it's not a bullseye. It's either a circle or it's not there. Now, we're going to fashion a rule of law that incorporates the bullseye theory. I just think that you have to look at all of the factors involved. I mean, I think anyone would agree, all reasonable minds would agree, that an individual in a burning house is certainly in a place not only of danger but of imminent danger or peril. Or somebody out on a ledge threatening to commit suicide and somebody tries to get them back in, that would be clear. Sure, absolutely. Well, what made me think of the bullseye was if your client's car had exploded in flames while someone was attempting to extricate her while she was unconscious, then I think you could say that it's reasonably foreseeable that somebody who was doing that or attempting to remove someone when it's imminent or imminent that there could be gas leakage and an explosion and so on and so forth, but the closer you get, the more danger there is and the more probability or reason for the application of the doctrine. But as you get further and further away from the accident scene, that there should be maybe some attenuation, that that's where imminent comes in as opposed to non-imminent? Well, exactly. I mean, I think if, for example, questions were asked of all of the witnesses, whether or not there was smoke from the car, or if there was anything that made them think that there was something about the car itself that was dangerous, and they all said no, it just looked like it was stuck. And all of the individuals, counsel indicated that all of the witnesses said that they were concerned about another car coming along and doing what happened, but that's not what the testimony was. The testimony was that none of them thought that that would happen. None of them were concerned about the location of the car in reference to other traffic. None of them were concerned that another car would come along and strike any of them. All of them testified that it didn't occur to them that such a thing could happen until after it happened, which comports with what the majority, I think, of reasonable people would presume. They're walking along a gravel area. Sure, was it nice and kind and thoughtful that this person stopped to see if they needed a phone call or something along those lines? Sure. Obviously, that's all nice and laudable and so forth, but that doesn't make it a rescue doctrine case. Counsel wants to, with the instructions he suggested, said just providing aid was sufficient. And the case law is very clear that simply providing aid is not sufficient. It has to be voluntarily assuming a known risk of harm to one's own person with the purpose of trying to secure the safety of or the life of someone else. And none of those facts are here in this case, and none of the witnesses indicated that they thought otherwise. So I think, I mean, bottom line, the instructions given by Judge Jeffrey in this case were completely in accord with the case law and the historical information from those cases, as well as the precedent going back as far as Leiterman. As far as- How many cases did you find that had the term rescue doctrine? Well, the very beginning ones, like Leiterman and shortly thereafter, those don't use the term rescue doctrine, but they contain the premise of the rescue doctrine. How many cases, if you did a word search for a rescue doctrine, how many cases would show up? 10, 20, 100, 300? Maybe 10, give or take. Not many. And as far as the information that, or the argument that we made a big deal about the fact that somebody wasn't running- Are any of those cases that you've researched relate to situations where it's the rescuee that's liable, as opposed to a third party who might place the rescuee in jeopardy? The rescue doctrine actually, when it first came up, was putting another person in danger, the negligent person being responsible for putting a third party in danger, and someone else comes to rescue them. That's the original rescue doctrine, but more modern cases in the last 10 years have said, well, wait a minute, especially looking at other jurisdictions beyond Illinois, have said, I think there was only one case in Illinois that actually indicated that a person could put him or herself in that position of danger. The beginning of it, as well as most of the case law until relatively recently, was about putting a third person in danger. And it's very recently that the logic was, well, if you can put someone else in danger and it be a rescue doctrine, then you can certainly put yourself in that dangerous position. Is there some reason why, that being the case, that your client didn't third party in the highway department for the road that this was on? Well, I think that the weather conditions weren't the fault of the highway department, per se. I think it was a combination of the slant of the road, the precipitation that had fallen, the temperature of the wind. Was it designed such that, as I think the trooper pointed out, it tilted a certain way, that it might have caused some, as we always say, unnatural accumulation? I suppose that's possible. I know there was one witness who said that he knew this was a notorious curve for being slick. I suppose it's possible. We didn't go there. We didn't think it was a rescue doctrine case to begin with. And ultimately, I think we cannot overlook the fact that the actions of the decedent and the information we have about that, did those actions, from what we know, indicate someone voluntarily assuming a known risk of harm? And the argument there is no, when you take into consideration the distance away they parked, the fact that there was a cell phone that was not utilized to call for help, the fact that the conversation that she had when approached by another one was very casual, that she wasn't even watching for oncoming traffic, according to the witnesses, and that she, I think it's important that she allowed her minor son to walk with her toward this location. If, I submit, reasonable mothers wouldn't have their minor son or child walk with them if they thought that they were assuming a known risk of harm. I think all of those factors were important. The casualness of the way they approached, casualness of the conversation, and all of those factors all indicate that they were not, she was not voluntarily assuming a known risk of harm. Thank you. I'll be brief. She clearly voluntarily assumed the risk of harm. No one forced her to do it. Her son said, Mom, we'd better stop and see if this lady's okay. That was Ben's testimony. Counsel's incorrect as to the testimony of the other bystanders. One of them was out at the other end trying to flag people down, so we didn't want people to go so fast. We were afraid the same thing would happen. The defendant herself said she saw the slush before she hits it. This isn't a situation, a black-eyed situation, where she doesn't see it. She admits that she broke and she shouldn't have. And it relates to Justice McLaren's question on the intervening cause. The cases specifically say that the rescue doctrine does break the causal connection and allows the plaintiff to allege that it is the defendant's negligence that causes it and not the negligence of the subsequent tortfeasor. Now, the issue of whether there's contribution between those two has never been raised in Illinois that I know of. I think there are only eight cases that use the term rescue doctrine, but so eight or ten is a pretty good estimate. And then finally, was this a place of danger? You've got three things that you can look at. Number one, the police officer testified that until you get traffic controlled, being on this side of the roadway is always a place of danger. The fact that the statute wants you to walk on the edge as opposed to down the middle of the street doesn't mean it's not a dangerous thing to do to walk along the state highway. Number two... Isn't it somewhat tautological to say that until you have traffic control, it's dangerous? I think it's just obvious. Isn't it also tautological? What do you mean by tautological? Well, if you don't have traffic control, then the traffic isn't controlled. If the traffic isn't controlled, then it's dangerous. Absolutely. If it's controlled, it's controlled. And if it's controlled, it's not dangerous. Absolutely. The statement is almost an oxymoron. That's right. That's why I know how you can argue with a straight face that walking along the side of a busy highway isn't a place of danger. It's a place of danger whether the traffic is under control or not. How many police officers with flashing lights get almost killed or side-swiped by vehicles that for some reason can't see them on the shoulder with their squad car and their lights on? Or construction zones. Yes. I suggest to you that the ultimate fact that proves beyond a doubt that this was a place of danger is that Brenda Reed's dead. It was clearly a place of danger. This car killed her. It was a dangerous place to be. And the fact that she didn't talk funny or run doesn't change that. This was a place of danger. She saw somebody. She was playing the role of a good Samaritan. She was doing what we wanted her to do, to render aid to a lady who had gone into a snow ditch and whose car was clearly stuck, and she was killed. The rescue document is exactly designed to take this situation into effect. Counsel, one final question. You're aware of the fact that we review the propriety of the jury instruction with the standard of abuse of discretion? I do. That no reasonable person would agree with the trial court's decision to give the instruction. You'd have to prevail under that standard to realize. Actually, I don't think that's how the courts look at jury instructions because it's not an issue of fact. Well, what would the standard of review be? What are you suggesting? I'm suggesting that you review them under the provisions of Supreme Court Rule 239, which delineates the propriety of the instruction. That is, it tells you if there's not an IPI instruction how the court should review the instructions in terms of it being a concise statement. I mean, our review of the trial court's actions, how do we determine if there was error? It would have to be an abuse of discretion standard, correct? It would have to be whether or not the court violated the Supreme Court rule or whether the instruction violated the Supreme Court rule and whether the competing instruction more accurately reflected the rule in the law. What is then whether or not the trial court exercised its discretion in making those determinations? Well, there's a standard. It's not de novo. You're almost suggesting it's de novo. We look at the instruction and decide whether or not it was properly given. There is a standard of deference here. The problem is this doesn't have anything to do with fact. In other words, does the court have the discretion to give an instruction which doesn't accurately state the law? And I'm suggesting that you don't. But that is what is meant by discretion. It's an abuse of discretion to improperly state the law. Correct. I think we would agree with that. Thank you. All right. We'll be in recess until the next case.